# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSSEAN CRISPIN, | ) | 3:23-CV-1636 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF CONNECTICUT, et al., | ) | |
| *Defendants*. | ) | August 19, 2024 |

## INITIAL REVIEW ORDER

*Pro se* Plaintiff Jossean Crispin, a sentenced inmate[1] at Cheshire Correctional Institution ("Cheshire"), filed this civil rights action *pro se* under 42 U.S.C. § 1983. He names twenty-six defendants: State of Connecticut, Department of Mental Health and Addiction Services ("DMHAS") Police, Department of Correction ("DOC"), Whiting Forensic Division Hospital ("Whiting Forensic Hospital"), DMHAS, Waterbury Superior Court Judge Joseph Schwartz, Attorney Ismian Feraizi, Attorney Brittney Paz, Law Firm Jay Ruane, Attorney Georgios Tarasidis, Attorney Jacqueline Fitzgerald, Attorney Mark McKey,[2] Attorney Peter Harvey, Jail Diversion Program staff Jane Doe, Waterbury Public Defenders Office, Middletown Public Defenders Office, Middletown State Prosecutor's Office, Waterbury State Prosecutor's Office, Attorney John Kaloidis, Whiting Forensic Hospital Unit Director Jane Doe, Dr. John Doe 1, Dr. John Doe 2, Forensic Specialist Jane Doe 1, Forensic Specialist Jane Doe 2, Forensic Specialist

---

[1] Information on the Department of Correction ("DOC") website shows that Plaintiff was most recently admitted to the DOC on December 5, 2023, and sentenced on that same day, to a term of imprisonment of three years for violation of his probation or conditional discharge.
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited August 19, 2024). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). The Court also takes judicial notice of filings reflecting that Plaintiff was incarcerated within DOC as of June 28, 2021, transferred to Whiting Forensic Hospital and then returned to Garner Correctional Institution as of May 3, 2022, and released from DOC custody as of June 13, 2022. *See Crispin v. Walker*, D. Conn. Civ. No. 3:21-cv-886 (KAD). *See* ECF Nos. 1, 14, 17.

[2] Plaintiff alternately uses the name McKey and McKay to refer to this defendant. *Compare* Compl., ECF No. 1 at 1 *to id.* at 13. Because he is referred to as Attorney "McKey" in the case caption, the Court uses this name throughout this Order.

John Doe 1, and Forensic Specialist John Doe 2.  Plaintiff asserts claims under the United States Constitution's First, Fourth, Fifth, Eighth, and Fourteenth Amendments, the Americans with Disabilities Act ("ADA") and Rehabilitation Act, the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI"), the federal Patient Bill of Rights, and state law.  Plaintiff seeks both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).  The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[3]  Based on this initial review, the Court orders as follows.

## I.    FACTUAL BACKGROUND

The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.  The Court assumes the truth of these allegations for purposes of initial review.

---

[3] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard.  *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

On January 5, 2022, Plaintiff was transferred to Whiting Forensic Hospital.[4]  Upon his admission, Plaintiff explained to Drs. John Doe 1 and 2 and Unit Director Jane Doe that he had civil rights actions pending in court.  Unit Director Doe informed him that he was at Whiting Forensic Hospital for treatment, not to litigate his legal actions.  Dr. Doe 1 and Dr. Doe 2 both agreed with Unit Director Doe.  After Plaintiff called the in-house patient advocacy unit and filed a patient grievance, he was provided access to some of his legal work but not enough for effective litigation.  Plaintiff alleges that he was subjected to adverse actions to obstruct his efforts to litigate his civil and criminal matters, including denials of copies of his legal documents, denial of a pen for drafting motions, and denial of the ability to mail his legal documents to courts.  Plaintiff claims that his legal matters were dismissed as result of these deprivations.

Plaintiff also claims that due to his litigation activity, he was subject to retaliatory deprivation of meals, and false reporting in his mental health record.  He asserts that the retaliatory acts escalated to his being assaulted by Forensic Specialists Jane and John Doe 1 (Defendants 23 and 24) after he filed a grievance about being threatened with a denial of meals if he failed to go to the cafeteria.  Plaintiff claims that on February 5, 2022 (after he filed his grievances), a staff member did not wake him up as "is the norm."  Instead, he woke up when the intercom announced the recreation yard was open.  When he walked into the breakfast room, he was denied his breakfast by Forensic Specialists Jane Doe 1 and 2 and John Doe 1 and 2.  Plaintiff claims that Forensic Specialist Jane Doe 1 was retaliating against him on behalf of her co-worker, Heather, who is a defendant in another of his cases, *Crispin v. Brady*, D. Conn. Civ. No. 21-cv-229 (KAD).

---

[4] The Court takes judicial notice that Whiting Forensic Hospital is an entity of the State of Connecticut's Department of Mental Health and Addiction Services and that it "specializes in providing inpatient services to individuals involved in the criminal justice system," including by means of Psychiatric Security Review Board commitment, criminal court order for restoration of competency to stand trial, and voluntary and involuntary civil commitment.  *See* Conn. Gen. Stat. § 17a-562; Connecticut Dept. of Mental Health and Addiction Services, Whiting Forensic Hospital, *available at* https://portal.ct.gov/DMHAS/WFH/Whiting-Forensic-Hospital (last visited August 19, 2024).

Because Plaintiff was extremely hungry and knew the food deprivation on February 5, 2022, was retaliatory, he reached for a carton of milk and cereal. He was thereafter violently physically assaulted and shoved about seven feet away. He started to walk back to his room because he feared for his safety. Forensic Specialist Jane Doe 1 swore at him and pressed a false body alarm that resulted in his being "corralled" when he walked into his room by Whiting staff members—including one forensic specialist and unspecified nurses, and doctors—and DMHAS Police. They ignored Plaintiff's explanation that he was recently assaulted by Forensic Specialist Jane Doe 1 and that she had denied him breakfast and pressed a false body alarm. Instead, Plaintiff was instructed to go into the "Time Out Room."

Although Plaintiff believed he had been set up, he said "okay" and walked to the "Time Out Room." As he approached the "Time Out Room," Plaintiff immediately experienced a claustrophobic anxiety attack and thought he was going to die. Plaintiff expressed that he was at Whiting Forensic Hospital for rehabilitation for the effects of his solitary confinement and that the "Time Out Room" would trigger mental decompensation. Plaintiff had previously informed his treatment team during his intake of this condition; he alleges that "everyone present" at the time of the instruction to enter the "Time Out Room" was aware of this condition. Plaintiff claims that he was forcibly shoved into the "Time Out Room" despite offering no resistance. His anxiety attack worsened and he could not breathe after being placed in the room.

When Whiting Forensic Hospital staff opened the door to check on him, Plaintiff was having trouble breathing and sweating profusely. After he rushed out crawling on his hands and knees, staff immediately piled on top of him, twisting his arms and legs painfully. His pants were "ripped" off while female staff watched. He was injected with an unknown medication and tied down to a bed. He was charged with a violation of probation, despite that he was the one who was

attacked.

Plaintiff's remaining allegations concern ineffective representation by Attorney McKey in Middletown Superior Court concerning, primarily, preservation of the video evidence concerning the events of February 5, 2022, at Whiting; ineffective representation by Attorney Feraizi in Waterbury Superior Court; ineffective representation by Attorney Harvey; due process violations committed by the Connecticut Superior Courts in Middletown and Waterbury, all attorneys assigned in these courts, and the Waterbury and Middletown State's Attorneys Offices; Judge Schwartz's failure to recognize violations of his constitutional rights and misconduct; constitutional violations and ineffective assistance of counsel by Attorney Brittany Paz; and ineffective representation by attorneys at the Jay Ruane Law Firm; and alleged conspiracy between his counsel and the prosecutor.[5]

Plaintiff requests compensatory, nominal, and punitive damages, and an injunction ordering his immediate release.

## II.    DISCUSSION

The Court will first consider whether Plaintiff has alleged any plausible claim of constitutional violation under 42 U.S.C. § 1983.

### A.  Official Capacity Claims

Although Plaintiff's complaint does not specify in what capacity he is suing Defendants, the Court liberally interprets his complaint as suing them in both their individual and official capacities.

---

[5] Plaintiff filed several exhibits and addenda after filing his complaint. *See* ECF Nos. 11, 14. The Court allowed Plaintiff an opportunity to file an amended complaint that included all documents he wanted the Court to consider, in one filing. Order, ECF Nos. 12, 16, 22. Plaintiff did not file an amended complaint, so the Court has proceeded with conducting an initial review of the original complaint without consideration of the exhibits or addenda, as it noted it would do in an order dated February 22, 2024. ECF No. 27.

Plaintiff may pursue individual capacity claims against Defendants for monetary damages, but may not seek injunctive relief against Defendants in their individual capacities, as Defendants would not have the authority to provide injunctive relief in their individual capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011) (citations omitted). The request for injunctive relief against Defendants in their individual capacities is therefore dismissed. The Court examines whether Plaintiff states a claim for damages against Defendants in their individual capacities below.

Nor may Plaintiff proceed with claims for damages against Defendants in their official capacities, as such claims are effectively suits against the state, and the Court cannot identify that any exception to the state's Eleventh Amendment immunity applies here. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citations omitted). The request for damages against Defendants in their official capacities is therefore dismissed.

Plaintiff may proceed with requests for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Smith v. Perez*, No. 19-CV-1758, 2020 WL 2307643, at *6 (D. Conn. May 8, 2020). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

The injunctive relief Plaintiff requests is his release. As a state prisoner seeking relief in federal court under Section 1983, Plaintiff can challenge the duration of his confinement only by

petition for writ of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (state prisoner who sought immediate release is required to do so by a habeas petition, not by a section 1983 suit); *Jenkins v. Haubert*, 179 F.3d 19, 24 (2d Cir. 1999) (describing *Preiser* as holding that, "for those cases at the heart of habeas corpus—those in which a prisoner challenges the fact or length of his confinement—habeas is the exclusive federal remedy, at least where the prisoner seeks an injunction affecting the fact or length of his conviction"). Accordingly, the court lacks authority, in assessing the present complaint brought under Section 1983, to grant Plaintiff's request for an injunctive order for his release. The request for injunctive relief against Defendants in their official capacity is therefore dismissed.

Thus, the Court proceeds to consider only whether Plaintiff has sufficiently alleged claims against any defendant in his or her individual capacity for damages.

B. Personal Involvement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

While the allegations of Plaintiff's complaint are difficult to read in places, the Court discerns no facts alleged in his complaint about conduct by Attorney Fitzgerald or Attorney Tarasidis. Thus, Plaintiff may not proceed on any claim against these Defendants, as he has not alleged their personal involvement in any alleged constitutional violation.

7

C.  Section 1983 Claims Against Appointed Criminal Defense Counsel

Plaintiff's complaint brings claims against Attorneys Mark McKey, Peter Harvey, Brittany Paz, John Kaloidis, and the Jay Ruane law firm, whom Plaintiff alleges were appointed to represent him in his criminal matters.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert,* 526 U.S. 286, 290 (1999) (citing 42 U.S.C. § 1983).  Accordingly, a plaintiff must show a violation of a federally protected constitutional or statutory right which was the result of state action, or action "under color of law." *See Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994).  A court-appointed attorney "performing a lawyer's traditional functions as counsel" to a party is not a state actor under section 1983. *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997); *Barfield v. Milling*, No. 3:14-CV-914 (VAB), 2015 WL 1737671, at *4 (D. Conn. Apr. 16, 2015) (collecting cases).  Likewise, an attorney who serves as a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a criminal defendant.  *Id.* (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318–19 (1981)).  Accordingly, Plaintiff cannot state a cognizable claim under section 1983 against any attorney who represented him for his criminal matters, including Attorneys Mark McKey, Peter Harvey, Brittany Paz, John Kaloidis, and the Jay Ruane law firm.

Although any private attorney would not generally be liable under section 1983, the Court considers whether Plaintiff may bring his claims against Attorneys McKey, Harvey, Paz, and Kaloidis, and the Jay Ruane Law Firm on the basis of any alleged conduct that may be considered state action.  *See United States v. International Brotherhood of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private

parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

To show that the actions of a private party may be attributable to the state, thereby making the private party subject to liability under section 1983, the plaintiff must show: "(1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (summary order) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)).

Plaintiff has not alleged any nonconclusory facts to show that Attorneys McKey, Harvey, Paz, and Kaloidis, or the Jay Ruane Law Firm, engaged in conduct that could be considered fairly attributable to the state. No allegation suggests that his appointed counsel was compelled by the State to take the actions of which Plaintiff complains; that there was a sufficiently close nexus between the State and conduct by Attorneys McKey, Harvey, Paz, Kaloidis, or the Jay Ruane Law Firm; or that the conduct consisted of activity that has traditionally been the exclusive prerogative of the State. *See Hogan*, 346 F. App'x at 629.[6]

Accordingly, all claims for damages under section 1983 against Attorneys McKey, Harvey, Paz, Kaloidis, or the Jay Ruane Law Firm are dismissed as not cognizable.

---

[6] Likewise, to the extent Plaintiff makes conclusory allegations asserting that his counsel engaged in a conspiracy with state actors, such allegations are not sufficient to support state action for a section 1983 claim. *See Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (allegations of conspiracy can be neither vague nor conclusory, but must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy."); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]onclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights" are insufficient.).

D. <u>Judicial Immunity</u>

To the extent Plaintiff asserts claims of constitutional violation against Connecticut Superior Court Judge Schwarz, such claims are barred by judicial immunity.

"It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions," *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (citing *Mireles v. Waco*, 502 U.S. 9, 9–10 (1991)), whether they are sued in their individual or official capacities, *Szymonik v. Connecticut*, No. 3:18-CV-263 (MPS), 2019 WL 203117, at *7 (D. Conn. Jan. 15, 2019), *aff'd*, 807 F. App'x 97 (2d Cir. 2020) (summary order).[7]  Judicial immunity applies unless the conduct alleged is non-judicial or is taken in the clear absence of all jurisdiction.  *Mireles*, 502 U.S. at 11–12.  Acts "arising out of, or related to, individual cases before the judge are considered judicial in nature."  *Bliven*, 579 F.3d at 210.  Judicial immunity "is conferred in order to insure 'that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'"  *Id.* at 209 (citation omitted).  Therefore, "even allegations of bad faith or malice cannot overcome judicial immunity."  *Id.*

Here, any claims under section 1983 against Judge Schwartz are plainly barred by judicial immunity because Plaintiff's allegations pertain only to Judge Schwartz's judicial acts.  Plaintiff may disagree with Judge Schwartz, but no allegations suggest that Judge Schwartz took any action that was either non-judicial in nature or rendered in the clear absence of jurisdiction.  *See Pappas v. Lorintz*, 832 F. App'x 8, 12 (2d Cir. 2020) (summary order) (affirming dismissal of claims where judge "operated in his judicial capacity at all times"); *Buhannic v. Friedman*, No. 18-CV-5729

---

[7] Moreover, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

(RA), 2019 WL 481732, at *5 (S.D.N.Y. Feb. 7, 2019) (finding that judge's "decisions to deny [the plaintiff's] various motions in the State Action [were] quintessential judicial acts").  The claims against Judge Schwartz are therefore dismissed.

### E.   State of Connecticut and State Agencies

Plaintiff names as Defendants the State of Connecticut, DOC, DMHAS, Whiting Forensic Hospital, the Waterbury and Middletown Public Defenders Office, and the Middletown Prosecutors Office.  The state, state agencies, and divisions of state agencies are not considered "persons" within the meaning of section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that state and state agency are not persons within the meaning of section 1983); *Paschal-Barros v. Quiros*, No. 3:21-cv-00698 (SALM), 2022 WL 124544, at *4 (D. Conn. Jan. 13, 2022) (DOC and DMHAS are "state agencies, and, therefore, they are not "persons" subject to suit under 42 U.S.C. § 1983).  *See also Siminausky v. Starkowski*, No. 3:15-cv-159 (VLB), 2016 WL 236208, at *6 (D. Conn. Jan. 20, 2016) (dismissing claims against UConn Health because UConn Health is not a person within the meaning of section 1983); *Walker v. Connecticut Superior Ct.*, No. 3:15-CV-935 JAM, 2015 WL 3970886, at *2 (D. Conn. June 30, 2015) (superior court and Office of the State's Attorney are not "persons" that may be sued under section 1983); *Franklin v. Chenango Cnty. Pub. Def.'s Off.*, No. 318CV0865BKSDEP, 2018 WL 4288620, at *4 (N.D.N.Y. Sept. 7, 2018) (Office of the Public Defender is not a person under section 1983).

Additionally, to the extent Plaintiff asserts a claim against the Middletown and Waterbury State's Attorney, prosecutors are entitled to absolute immunity from suit when acting in their discretionary roles in connection with a criminal proceeding.  *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) ("A prosecutor acting in the role of an advocate in connection with a

judicial proceeding is entitled to absolute immunity for all acts intimately associated with the judicial phase of the criminal process." (citation omitted) (internal quotation marks omitted)). The Court liberally construes Plaintiff's allegations as centering on the prosecutors' decisions to proceed with his criminal charge for a violation of probation related to the February 5, 2022, incident. Such decisions fall squarely into prosecutors' discretionary roles, and would therefore be barred by prosecutorial immunity.

Accordingly, the Court dismisses as not cognizable all claims under section 1983 against DOC, DMHAS, Department of DMHAS Police, Whiting Forensic Hospital, the Waterbury and Middletown Public Defender Offices, and the Waterbury and Middletown Prosecutor's Offices.

F. <u>First Amendment Claims</u>

Moving to Plaintiff's substantive claims, Plaintiff alleges that various Defendants unlawfully retaliated against him for his constitutionally-protected activity, restricted his access to the courts, and interfered with his right to his free flow of mail.

*1. Retaliation Claims*

To plead a First Amendment retaliation claim, a plaintiff must plausibly allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (cleaned up) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). The Second Circuit has "instructed district courts to 'approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory

act.'"  *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)).

Here, Plaintiff contends that DMHAS staff retaliated against him due to his litigation efforts by denying his access to the courts, writing false reports in his mental health record, and denying him meals; he claims the retaliation escalated after he filed a grievance.  The filing of administrative grievances and lawsuits are constitutionally protected activities.  *Stewart v. Ayala*, No. 3:20-cv-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022).  Thus, the Court concludes that Plaintiff has adequately pleaded the first element of a retaliation claim.

Even assuming Plaintiff's allegations describe adverse actions, however, Plaintiff's allegations do not suffice for the third element, a causal connection between any adverse action and his protected activity.  To plead causation in the First Amendment retaliation context, a plaintiff must allege "but-for" causation.  *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019) (finding that causation in a First Amendment retaliation claim "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive") (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006)); *accord Handsome, Inc. v. Town of Monroe*, No. 23-711, 2024 WL 2747142, at *5 (2d Cir. May 29, 2024) (summary order); *Burden v. Inc. Vill. of Port Jefferson*, 664 F. Supp. 3d 276, 283 (E.D.N.Y. 2023).[8]  Plaintiff generally asserts in conclusory terms that the adverse actions he sustained were the result of retaliation.  His only specific allegation is that Forensic Specialist Jane Doe 1 retaliated against him on behalf of a co-

---

[8] The Court notes that, prior to the Supreme Court's decision in *Nieves*, there were diverging views as to whether the causation standard for a First Amendment retaliation claim was "but-for" or substantial motivating factor."  *See Rivers v. N.Y. City Housing Auth.*, 176 F. Supp. 3d 229, 245–47 (E.D.N.Y. 2016) (collecting cases and applying the substantial motivating factor test).  The Court believes that *Nieves* has settled the debate and has effectively abrogated Second Circuit precedent describing the causation standard as substantial motivating factor.  *Compare Handsome*, 2024 WL 2747142, at *5 (applying but-for causation test) *to Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) (applying the substantial motivating factor test for section 1983 First Amendment employment retaliation case); *but see Specht v. City of N.Y.*, 15 F.4th 594, 605 (2d Cir. 2021) (citing *Morris*, 196 F.3d at 110, and applying substantial motivating factor test even after *Nieves*).

worker who was a defendant in another of his cases, *Crispin v. Brady*, D. Conn. Civ. No. 21-cv-229 (KAD).  But the Court's judicial notice of the docket in *Crispin v. Brady* shows that the action was dismissed on procedural grounds on January 6, 2022, without service of the complaint, because Plaintiff failed to pay the filing fee.  *Id.*, ECF No. 25.  Thus, even when the present complaint is construed liberally, it is not plausible to infer that Forensic Specialist Jane Doe 1 was aware of his prior case and harbored a retaliatory animus because Plaintiff had named her co-worker as a Defendant in that earlier action.  *See Schlosser v. Manuel*, No. 3:19-CV-1444 (SRU), 2020 WL 127700, at *4 (D. Conn. Jan. 10, 2020) (dismissing retaliation claims where plaintiff had not alleged that defendant was aware that he had filed a grievance); *see also Cresci v. Mohawk Valley Cmty. Coll.*, No. 614CV1172 (GTS/TWD), 2017 WL 9673715, at *7 (N.D.N.Y. Dec. 15, 2017), *report and recommendation adopted*, No. 614CV1172 (GTS/TWD), 2018 WL 1272504 (N.D.N.Y. Mar. 12, 2018) (denying motion to amend previously dismissed First Amendment retaliation claim because plaintiff "failed to allege facts showing the who, what, where, and why of the civil rights litigation in which he had been involved and thereby failed to plausibly show that Defendants were aware of the nature of any alleged 'speech' related to the litigation").  As Plaintiff has not stated any allegations concerning the possible retaliatory motives of any other Defendant (other than conclusory allegations regarding their general awareness of his cases), the Court will not permit Plaintiff to proceed on his retaliation claims based upon his wholly conclusory assertions that any Defendant acted with a retaliatory motive.  This approach is consistent with the Second Circuit instruction to approach retaliation claims with some measure of skepticism.  Plaintiff's First Amendment retaliation claims are therefore dismissed.

2.   *Access to the Court Claims*

The First Amendment to the United States Constitution, in conjunction with the other constitutional provisions, guarantees prisoners "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996)); *see also Morello v. James*, 810 F.3d 344, 346 (2d Cir. 1987).  Thus, prison officials are prohibited from "actively interfering with inmates' attempts to prepare legal documents . . . or file them."  *Lewis*, 518 U.S. at 350 (internal citation omitted).  For denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants.  *Lewis*, 518 U.S. at 351–53.  To establish an actual injury, an inmate must allege facts showing that the defendant took or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim.  *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) (the plaintiff must identify a "'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court) (citation omitted); *see also Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded" (footnotes omitted)).

Plaintiff contends that DMHAS staff obstructed his right to court access by denying him a pen, refusing to provide copies of his legal documents, and failing to mail out his court filings, which caused dismissal of the actions.  But Plaintiff fails to allege who acted to deny him the pen, copies or mailings, as is required to state a Section 1983 claim.[9] *See Wright*, 21 F.3d at 501.  Nor do his allegations identify a nonfrivolous claim that was prejudiced as a result of the alleged interference with his right to court access.  *See Chaney v. Koupash*, No. 04-cv-136 (LEK/DRH), 2008 WL 5423419 at *11 (N.D.N.Y. Dec. 30, 2008) (dismissing access to the court claim, in part,

---

[9] Plaintiff's allegation that Unit Director Jane Doe stated that he was at Whiting Forensic Hospital for treatment rather than litigation of his legal matters does not support the inference that she took action to obstruct his litigation efforts.

because inmate-plaintiffs "failed to state how defendants' actions contributed to plaintiffs' alleged damages or which demonstrable injuries plaintiffs suffered").  Absent facts reflecting personal involvement by a particular Defendant or prejudice to a nonfrivolous claim, Plaintiff's claim based on deprivation of court access is not plausible and must be dismissed.

### G.  Eighth/Fourteenth Amendment Claims

The Court construes Plaintiff's complaint to assert claims of excessive force and deliberate indifference to his mental health needs.

Plaintiff's status as either a convicted prisoner or a pretrial detainee dictates whether his claims are analyzed under the Eighth or Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29–35 (2d Cir. 2017).  It is not clear from Plaintiff's complaint whether he was a sentenced inmate on February 5, 2022, when the alleged assault occurred.  Plaintiff's placement at Whiting Forensic Institute on the day of the alleged assault further complicates matters.  Thus, it is not clear that the Eighth Amendment—which protects prisoners from "cruel and unusual punishment" at the hands of prison officials—governs his claims of excessive force and deliberate indifference, or if the Fourteenth Amendment—which governs excessive force and deliberate indifference claims against unsentenced inmates—applies.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Koram v. Conn. Dep't Corr.*, No. 3:23-cv-729 (KAD), 2023 WL 4669533, at *1 (D. Conn. July 20, 2023) (citing *Darnell*, 849 F.3d at 29–35).

Because the Court cannot now resolve the ambiguity, the Court analyzes Plaintiff's claims of excessive force and deliberate indifference under both the Fourteenth Amendment and the Eighth Amendment.  *See Darnell*, 849 F.3d at 35 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)) (explaining that a Fourteenth Amendment deliberate indifference claim only

requires a showing of objective deliberate indifference, whereas an Eighth Amendment claim requires a subjective showing).

### 1.  Excessive Force:  Fourteenth Amendment

To prevail on a claim of excessive force in violation of the Fourteenth Amendment, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97.  In other words, a plaintiff must demonstrate both (1) the defendant's purposeful or knowing state of mind, and (2) the objective unreasonableness of his use of force.  *See id.*  This standard cannot be applied "mechanically"; rather, it "turns on the 'facts and circumstances of each particular case.'"  *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Regarding the first element, a defendant must have possessed "a purposeful, a knowing, or possibly a reckless state of mind" to be liable for excessive force.  *Id.* at 396.  However, if the plaintiff's claim of excessive force amounts to no more than negligently inflicted force, the claim cannot proceed under the Fourteenth Amendment.  *See id.*  The second element considers whether the force employed was objectively unreasonable.  *Id.* at 397.  The force employed will be deemed objectively unreasonable if it was "not rationally related to a legitimate governmental objective," or if it was "excessive in relation to that purpose."  *Edrei v. Mason*, 892 F.3d 525, 535–36 (2d Cir. 2018) (quoting *Kingsley*, 576 U.S. at 398).

Plaintiff alleges that he was assaulted by Forensic Specialist Jane Doe 1 after he tried to obtain breakfast, was corralled by fifteen to twenty individuals from Whiting Forensic Hospital and DMHAS Police when he entered his room, was grabbed and shoved into the "Time Out Room," and assaulted when he crawled out of that room.  Even if these allegations raise at least an inference of intentional or knowing use of unreasonable use of force, Plaintiff only identifies

Forensic Specialist Jane Doe 1 and John Doe 1 as Defendants involved with his assault.  Plaintiff does not otherwise allege facts to specify how any other individual Defendants were involved in the alleged misuse of force against him.  Accordingly, Plaintiff may proceed on this Fourteenth Amendment claim only against Forensic Specialists Jane Doe 1 and John Doe 1.

### 2.   *Excessive Force:  Eighth Amendment*

Plaintiff also states a plausible claim for use of excessive force under the Eighth Amendment against Forensic Specialists Jane Doe 1 and John Doe 1.  To state a claim for use of excessive force in violation of the Eighth Amendment, Plaintiff must allege facts establishing both objective and subjective components.  *See Sims v. Artuz*, 230 F.3d 14, 20–21 (2d Cir. 2000).  The objective component focuses on the harm done to the inmate in light of "contemporary standards of decency."  *Id.* at 21 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  The "amount of harm" required "depends on the nature of the claim."  *Sims*, 230 F.3d at 21.  As the Court has already explained, Plaintiff alleges that Forensic Specialists Jane Doe 1 and John Doe 1 assaulted him.  These allegations satisfy the objective component on initial review.

"In an excessive-force case, whether conduct was 'wanton' turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id.* at 21 (quoting *Hudson*, 503 U.S. at 7).  While Plaintiff has not expressly stated that these Defendants acted wantonly, the Court finds that Plaintiff has alleged as much for initial review purposes.  Plaintiff has explained that the assault was provoked only by his asking for breakfast.  An unprovoked attack and assault satisfies the subjective component on initial review.

Accordingly, Plaintiff has also plausibly alleged an Eighth Amendment excessive force claim against Forensic Specialists Jane Doe 1 and John Doe 1 for purposes of initial review.  Any

Eighth Amendment excessive force claim against other Defendants fails for the same reason discussed above—Plaintiff fails to identify any particular Defendant who was personally involved.

The Court notes that Plaintiff will ultimately be able to proceed only on *either* the Fourteenth Amendment excessive force claim *or* the Eighth Amendment excessive force claim, depending on his status as either a pretrial detainee or sentenced prisoner on the date of the assault. Defendants are encouraged to move to dismiss the inapplicable claim after investigating Plaintiff's status on the relevant date.

### 3.  Deliberate Indifference to Mental Health Needs:  Fourteenth and Eighth Amendments

The Court construes the Plaintiff's complaint as alleging both Eighth and Fourteenth Amendment claims based on deliberate indifference to his mental health needs.

To establish a deliberate indifference claim under the Fourteenth Amendment, Plaintiff must satisfy a "two-prong test comprised of both objective and subjective standards." *McDaniel v. City of N.Y.*, No. 19 Civ. 8735 (KPF) (RWL), 2022 WL 421122, at *6 (S.D.N.Y. Feb. 11, 2022). For the objective prong, the plaintiff must show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell*, 849 F.3d at 29. For the subjective prong, the plaintiff must also establish that the "officer acted with at least deliberate indifference to the challenged conditions," which, in the context of the Fourteenth Amendment, means that he or she "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35; *see also Vega v. Semple*, 963 F.3d 259, 273–74 (2d Cir. 2020).  Thus, in the Fourteenth Amendment context, the "subjective" prong is defined objectively. *Darnell*, 849 F.3d at 35.

19

In order to establish an Eighth Amendment claim of deliberate indifference to safety, a prisoner must show:  "(1) 'that [the plaintiff] is incarcerated under conditions posing a substantial risk of serious harm,' and (2) that the prison official had a 'sufficiently culpable state of mind,' which in 'prison-conditions cases' is 'one of deliberate indifference to inmate health or safety.'" *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  Essentially, a Fourteenth Amendment claim mirrors the Eighth Amendment under the objective prong, *Darnell*, 849 F.3d at 30, but applies a less stringent subjective prong, *id.* at 32.

The Court assumes that Plaintiff was subjected to an objectively serious medical condition when he was placed in the "Time Out Room" despite that he was suffering from lingering effects of solitary confinement and there was a risk he would mentally decompensate.  Nevertheless, Plaintiff has not alleged any plausible claim of either Fourteenth or Eighth Amendment deliberate indifference to his mental health needs arising from being forced to enter the "Time Out Room" because he has not specified which individual Defendants forced him to enter that room.  *See Wright*, 21 F.3d at 501.  Although Plaintiff claims that he told the people who placed him in the room that he would mentally decompensate if placed there, the Court cannot allow this claim to proceed when it is not clear which Defendants acted in the potentially unconstitutional manner.  Thus, Plaintiff has not sufficiently alleged facts to raise an inference of plausible Fourteenth or Eighth Amendment indifference to his mental health needs.  Accordingly, these claims are dismissed.

### 4.  Involuntary Medication

Next, the Court examines whether Plaintiff has alleged a constitutional violation in connection with the forced administration of medication after he left the "Time Out Room."

20

The Fourteenth Amendment "protects the individual's liberty interest in making the decisions that affect his health and bodily integrity." *Pabon v. Wright*, 459 F.3d 241, 253 (2d Cir. 2006). A "person has a constitutionally protected liberty interest in refusing unwanted medical treatment." *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 278 (1990); *see also Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) ("We have also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment."); *see also Washington v. Harper*, 494 U.S. 210, 221–27 (1990) (recognizing a prisoner's "significant liberty interest in avoiding the unwanted administration of antipsychotic drugs" but holding that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest.").

Plaintiff alleges that he was injected by a female staff member with an unknown medication. Even if he alleges facts that he was unnecessarily medicated without need, Plaintiff has not alleged facts to reflect *who* was involved with his involuntary medication. Accordingly, Plaintiff has failed to allege a plausible Fourteenth Amendment violation for involuntary medication, and such claim is dismissed. *See Wright*, 21 F.3d at 501.

### H. Fifth Amendment Claims

Plaintiff asserts that Defendants have violated his Fifth Amendment rights. The Court assumes that Plaintiff intended to bring claims that the defendants violated his Fifth Amendment due process rights. However, the Fifth Amendment's Due Process Clause does not apply to state actors; it prohibits the United States, not the States themselves, from depriving any person of life, liberty, or property without due process of law. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002). Any Fifth Amendment claims are therefore dismissed as not plausible under 28 U.S.C.

21

§ 1915A(b)(1).

    I.   <u>Fourth Amendment Claims</u>

Plaintiff also asserts Fourth Amendment violations, presumably with respect to exposure of his buttocks and genitalia when the allegedly involuntary medication was administered.  The Fourth Amendment protects against "unreasonable" governmental "searches and seizures."  U.S. Const. amend. IV.  However, the "proscription against unreasonable searches does not apply within the confines of the prison cell."  *Hudson v. Palmer*, 468 U.S. 517, 526 (1984).

The Second Circuit, however, has recognized that a prisoner has a privacy interest concerning the "involuntary viewing of private parts of the body by [prison officials] of the opposite sex."  *Forts v. Ward*, 621 F.2d 1210, 1217 (2d Cir. 1980).  Courts in this Circuit, however, "distinguish between 'regular' and 'close' viewings of a naked prisoner of the opposite sex and 'incidental' and 'brief' viewings and find viewings of the latter type constitutional."  *Langron v. Koniecko*, No. 3:21-CV-1531 (MPS), 2021 WL 5827065, at *2 (D. Conn. Dec. 8, 2021); *see also Little v. City of New York*, No. 13 CV. 3813 (JGK), 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014) (discussing strip searches by officers of the opposite sex and noting that "'incidental' and 'brief' viewing of a naked prisoner" is constitutional); *Holland v. City of New York*, 197 F. Supp. 3d 529, 543 (S.D.N.Y. 2016).

Plaintiff alleges that his pants were ripped off, exposing his genitalia and buttocks, while female staff watched.  But Plaintiff has not alleged facts sufficient for this Court to determine whether his exposure was more than a brief incident.  Even if his exposure raises Fourth Amendment concerns, Plaintiff has again failed to allege any facts to reflect that any individual Defendant was involved in a plausible Fourth Amendment violation.  *See Wright*, 21 F.3d at 501. Therefore, the Court dismisses Plaintiff's Fourth Amendment claims.

J.   ADA and Rehabilitation Act

The standards under Title II of the ADA and § 504 of the Rehabilitation Act "are generally the same[.]"  *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[10]  The ADA and the Rehabilitation Act both apply to state prisons and prisoners.  *Id.* at 72.

To establish a prima facie violation under Title II of the ADA or the Rehabilitation Act, a plaintiff must show that:  (1) he is a qualified individual with a disability; (2) Defendants are entities subject to the acts; and (3) he was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or Defendants otherwise discriminated against him by reason of his disability.  *Id.*  There are "three available theories[]" of discrimination that can be used to establish the third prong of an ADA and Rehabilitation Act claim:  "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

The Court assumes for purposes of initial review that Plaintiff is a qualified individual under the ADA and Rehabilitation Act on the basis of his mental illness.  But Plaintiff fails to allege that he was denied participation in any service, program, or activity because of any disability.  Moreover, Plaintiff does not specify the theory on which he brings his disability discrimination claims, and the Court cannot construe from the allegations any particular theory of disability discrimination under the ADA or Rehabilitation Act.  His allegations do not suggest that he was treated differently or discriminated against because of a disability.  *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010) ("Courts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the

---

[10] The only major difference between the ADA and Rehabilitation Act is that the Rehabilitation Act applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here.  *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together).

inmate was treated differently because of his or her disability.").  To the extent Plaintiff challenges the level or type of service he received, neither the ADA nor the Rehabilitation Act "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice."  *Reese v. Breton*, No. 3:18-CV-01465 (VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020).

Thus, as alleged, the facts to do not state a claim under the ADA and Rehabilitation Act against any Defendant.  Such claims must be dismissed.

### K.  PAIMI

Plaintiff claims that Defendants violated the Protection and Advocacy for Mentally Ill Individuals Act of 1986 ("PAIMI"), 42 U.S.C. §§ 10801–10805.  But the Court cannot conclude that Plaintiff has a private right of action under PAIMI.

PAIMI requires each state, as a condition of receiving certain federal funding, to establish a government agency or private organization as the protection and advocacy service for the state to protect and advocate for the rights of individuals with mental illness.  42 U.S.C. §§ 10802, 10803.  Under PAIMI, qualifying protection and advocacy agencies or organizations have statutory authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness...."  *Id.* at § 10805(a)(1)(B).

The Supreme Court has held that no basis for a private lawsuit exists, "whether under § 1983 or under an implied right of action," unless the "text and structure of a [federal] statute provide[s] ... [an] indication that Congress intend[ed] to create new individual rights."  *Gonzaga University v. Doe,* 536 U.S. 273, 286 (2002).  Courts have held that the provisions of PAIMI do not provide a private right of action to an individual to enforce the requirements regarding the protection of individuals with mental illness.  *See Lawson v. Nat'l Church Residencies,* Case No.

5:15-cv-332 (MW/GRJ), 2016 WL 2643155, at *2 (N.D. Fla. Apr. 6, 2016) ("PAIMI does not create an enforceable private right of action."), *report and recommendation accepted and adopted,* Case No. 5:15-cv-332 (MW/GRJ), 2016 WL 3566856, at *1 (N.D. Fla. June 27, 2016); *Darnell v. Jones,* No. CIV-12-1065-M, 2014 WL 4792144, at *3 n.4 (W.D. Okla. Sept. 24, 2014) ("the PAIMI Act authorizes certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to" plaintiff who is an inmate) (citations omitted), *aff'd,* 610 F. App'x. 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340 (JS) (GRB), 2013 WL 5532649, at *2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals").

The Court agrees with these sister courts that no individually enforceable private rights are conferred under the PAIMI Act.  Accordingly, Plaintiff's claim under the PAIMI Act is dismissed.

L.  Federal Patient Bill of Rights

Plaintiff alleges violations of the federal Patient Bill of Rights, 42 C.F.R. § 482.13. However, patients' bills of rights do not generally create enforceable federal rights.  *See, e.g.*, *Baum v. Northern Dutchess Hosp.*, 764 F. Supp. 2d 410, 426–27 (N.D.N.Y. Jan. 24, 2011) (collecting cases concluding that Patient Bill of Rights statutes do not confer federal rights); *Vaughn v. Ryan Health Care Ctr.*, No. 22-CV-1637 (LTS), 2022 WL 673607, at *4 (S.D.N.Y. Mar. 7, 2022) ("Although it is unclear to which "Patient's Bill of Rights" Plaintiff refers, state and

federal Patients' Bills of Rights generally do not create enforceable federal rights."). Accordingly, Plaintiff's claim under the federal Patient Bill of Rights must be dismissed as not plausible.

M.  <u>State Law Claims</u>

As at least one federal claim—the claim for excessive force against Forensic Specialists Jane Doe 1 and John Doe 1—will proceed past initial review, the Court will exercise supplemental jurisdiction over certain of Plaintiff's state law claims.

*1.  Assault and Battery*

In Connecticut, a civil assault is defined as "the intentional causing of imminent apprehension of harmful or offensive contact with another." *German v. Dzurenda*, No. 3:09-cv-1316 (SRU), 2011 WL 1214435, at \*22 (D. Conn. Mar. 28, 2011). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334, n.3 (1975)).

For purposes of this initial review, Plaintiff's allegations are sufficient to raise an inference that he was subjected to assault and battery by Forensic Specialists Jane and John Doe 1 only. He may proceed with this claim.

*2.  Hospital Bill of Rights, Connecticut General Statutes § 19a-550*

Plaintiff claims violation of the Hospital Bill of Rights under Connecticut General Statutes § 19a-550.

As a threshold matter, the Patients' bill of rights provided by § 19a-550 applies to "any person admitted as a patient to any nursing home facility, residential care home or chronic disease hospital," and provides that such entities can be liable to "such patient[s] in a private cause of

action for injuries suffered as a result" of the deprivation of their rights under the section.  Conn. Gen. Stat. § 19a-550(b), (e).  However, the Court's research revealed no case law applying this section to state agencies like those named in Plaintiff's complaint, or otherwise analyzing a claim under this provision in the context of prisoner litigation.  Accordingly, the Court declines to exercise supplemental jurisdiction over this claim, which appears to raise a novel interpretation of state law.  *See* 28 U.S.C. § 1367(c)(1) (noting that a district court may decline to exercise supplemental jurisdiction over a claim that "raises a novel or complex issue of State Law....").

### 3.  *Discrimination, Connecticut General Statutes § 46a-58*

Plaintiff also asserts claims under Connecticut General Statutes § 46a-58, which generally prohibits depriving any person of their federal or state rights, privileges, or immunities on the basis of protected factors such as race, disability, gender identity, and status as a victim of domestic violence.  Here, Plaintiff has not alleged facts to describe how any defendant violated section 46a-58, and the mere mention of a statutory violation is not sufficient to state a claim for relief under that statutory provision.  *See, e.g., Burke v. Lamont*, No. 3:22-CV-475 (OAW), 2022 WL 3997549, at *14 (D. Conn. Sept. 1, 2022) ("Plaintiff cannot mention a claim without providing factual support for that claim."); *Monger v. Connecticut Dep't of Transp.*, No. 3:17CV00205 (JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state constitution, however, is not sufficient to state a claim upon which relief can be based.").

### ORDERS

**Based on the foregoing, the Court issues the following orders:**

Plaintiff may proceed on his individual capacity claims for damages based on:

(1) Eighth/Fourteenth Amendment violations based on excessive force against Forensic Specialists Jane Doe 1 and John Doe 1; and

27

(2) State common law assault and battery claim against Forensic Specialists Jane Doe 1 and John Doe 1.

All other claims are dismissed.

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth above against Forensic Specialists Jane and John Doe 1, he may do so without further delay.  If Plaintiff selects this option, he shall file a notice on the docket on or before **September 18, 2024**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph.  After Plaintiff identifies Forensic Specialists Jane and John Doe 1, the Court will begin the effort to serve process on them in their individual capacities.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **September 18, 2024**.  **An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any Amended Complaint.**  The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein.  If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **September 18, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.**  If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or counsel for Defendants of his new address.

*Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

It is so ordered this 19th day of August 2024, at Hartford, Connecticut.